# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY McQUERY,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                    Defendants. | Case No.: 16cv170 BAS (BGS)<br><br>**REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS FOR LACK OF PROSECUTION**<br><br>[ECF Nos. 18, 23] |

      Plaintiff Stanley McQuery ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 1983 on January 22, 2016. (ECF No. 1.) Plaintiff's Complaint appears to assert claims for excessive force, assault and battery, denial of medical care, and cruel and unusual punishment based on allegations a San Diego police officer ordered a police dog to bite and hold him while arresting him. (*Id.*)

      On January 9, 2017, Defendants City of San Diego *erroneously named as San Diego Police* and Jonathan Wiese, *erroneously named as J. Wiese* ("Officer Wiese") filed a Motion for Summary Judgment. (Mot. for Summ. J. ("Motion") [ECF No. 18].) Plaintiff did not file an Opposition to the Motion. On April 25, 2017, Defendants filed a Motion to Dismiss for Lack of Prosecution. (ECF No. 23.) Both motions have been referred to the undersigned Magistrate Judge for a Report and Recommendation

("R&R"). For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** and Defendants' Motion to Dismiss for Lack of Prosecution be **DENIED as moot.**

## BACKGROUND

**I.     Procedural Background**

Plaintiff filed his Complaint in this action on January 22, 2016. (ECF No. 1.) Plaintiff's Motion to Proceed In Forma Pauperis was granted on March 2, 2016 and a summons was issued. (ECF Nos 3-4.) After the Court received notice that Plaintiff had been transferred to California Institution for Men, the Court reissued the IFP Package to Plaintiff at his new address. (ECF Nos. 6-7.) On May 6, 2016, the City of San Diego and Jonathan Wiese filed an Answer to the Complaint. (ECF No. 9.)

On May 10, 2016, the Court issued a Scheduling Order setting deadlines for the completion of discovery and all pretrial deadlines. (ECF No. 10.) On July 20, 2016, Plaintiff submitted a letter that the Court construed as a request for appointment of counsel. (ECF No. 12) That request was denied without prejudice. (ECF No. 13.)

On September 23, 2016, Plaintiff filed a Notice of Change of Address. (ECF No. 14.) On September 27, 2016, Plaintiff submitted a form that appeared to be a state court of appeals form to request an extension. (ECF No. 15-16.) As the Court explained in denying the request, the only date identified on the form was not a deadline set by this Court. (ECF No. 17.) However, the Court's Order advised Plaintiff that if he was seeking to extend a deadline set by the Court, he could file a motion identifying the deadline, what he was required to do by the deadline, and explain why he needed the extension of the deadline. (*Id.*)

The record before the Court reflects that Plaintiff has neither propounded nor responded to any discovery or otherwise complied with the Scheduling Order. Specifically, Defendants' Motion indicates that Plaintiff failed to provide his initial disclosures and did not propound discovery. (Mot. Ex. A, Decl. of David C. Scott ("Scott Decl.") ¶¶ 4-6.) Plaintiff also did not respond to Defendants' discovery requests. (*Id.* at

¶¶ 7-8.) Nor did Plaintiff serve his pretrial disclosures or submit a pretrial order to Defendants. (Mot. to Dismiss for Lack of Prosecution [ECF 23] at 2.)

As noted above, on January 9, 2017, Defendants City of San Diego and Jonathan Wiese filed a Motion for Summary Judgment. (ECF No. 18.) In addition to notice of the Motion by way of Defendants' service of the Motion, the Court also provided Plaintiff with notice of the Motion and requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). (ECF No. 19.) This notice also indicated that his Opposition was due March 9, 2017. (*Id.*) Additionally, the Court issued a separate briefing schedule. (ECF No. 20.) The briefing schedule also advised Plaintiff his Opposition or Statement of Non-Opposition was due on March 9, 2017. (*Id.*) Plaintiff has not filed an Opposition to the Motion.

## II. Factual Background

Defendants have produced evidence of the following facts.[1] On April 23, 2015, at approximately 3:30 a.m., Officer Wiese assisted in responding to a report of a "hot prowl burglary"[2] in which an individual had broken into a residence, forced the victim inside the residence out of his electric wheelchair, and fled the location with the victim's wheelchair and cell phone. (Motion, Ex. B, Decl. of Jonathan Wiese ("Wiese Decl.") ¶¶ 4, 7; Ex. C, Decl. of Michael Wagner ("Wagner Decl.") ¶ 7.)) The suspect was described by the dispatcher as a black male in his thirties, medium build, shirtless, wearing dark pants, and with a bandage on his forehead. (Wiese Decl. ¶ 7.)

As he approached the area, Officer Wiese observed a shirtless black male in dark pants riding in an electric wheelchair. (*Id.* ¶ 9.) When the suspect, later identified as Plaintiff, saw the police car in front of Officer Wiese's vehicle arriving, he jumped out of

---

[1] As the Court explains more below, these facts are undisputed because Plaintiff has not filed an opposition or put forth any evidence disputing them.

[2] Officer Wiese's Declaration indicates that a hot prowl burglary is a burglary in which the residence or building being burglarized is occupied. (Wiese Decl. ¶ 6.)

the wheelchair and ran. (*Id.* ¶ 10.) Plaintiff cut through a gas station and down an alleyway into a residential area. (*Id.* ¶ 11) Officer Wiese, while still driving his vehicle, rolled down his window and observed Plaintiff had a white bandage on his forehead. (*Id.*) Officer Wiese yelled something along the lines of "Stop or I'll send the dog! Stop or I'll send the police dog and he will bite you!"[3] (*Id.* ¶ 14.) Plaintiff continued to run. (*Id.*)

Officer Wiese released the dog, Ufo, from the patrol car and gave him the command to bite and hold. (*Id.* ¶ 15.) Officer Wiese and Ufo followed Plaintiff down an ally until Plaintiff turned into an apartment complex. (*Id.* ¶ 17.) Officer Wiese recalled Ufo because the dog lost sight of Plaintiff and then Officer Wiese redirected him in the direction Plaintiff went. (*Id.* ¶¶ 18-19.) Plaintiff then made a sharp turn onto the sidewalk in front of the apartment complex and dove into knee high bushes such that Officer Wiese could not see what he was doing. (*Id.* ¶¶ 20-21.)

Ufo followed Plaintiff into the bushes. (*Id.* ¶ 22.) Plaintiff sat up and Officer Wiese could see that Ufo had bitten and was holding Plaintiff by his upper right arm, but he could not see Plaintiff's hands or the lower half of his body. (*Id.* ¶¶ 23-24.) When Officer Wiese ordered Plaintiff onto his stomach, Plaintiff moved around for a bit and then laid on his stomach with Ufo continuing to hold his right arm. (*Id.* ¶¶ 24-25.)

Officer Wiese then approached Plaintiff, told him to put his left arm behind his back while signaling other officers to his location with his flashlight, and then held on to Plaintiff's left arm behind his back. (*Id.* ¶¶ 26-27.) When Officer Whann arrived at the location, Officer Wiese handed him Plaintiff's left arm while Officer Wiese reached under Plaintiff and pulled out his right arm, and then handed his right arm to Officer Whann to handcuff Plaintiff. (*Id.* ¶ 28.) While Officer Whann handcuffed Plaintiff,

---

[3] He indicates he yelled the quoted language, but notes it is not verbatim. (Wiese Decl. ¶ 14.)

Officer Wiese took hold of Ufo, removed him from the bite, walked him out of the bushes, and returned him to the patrol car. (*Id.* ¶¶ 29-30.)

Plaintiff was patted down and placed in a patrol car by Officers Sims and MacIntyre while Officer Kashouty radioed for medics to provide medical assistance to Plaintiff. (Motion, Ex. D, Decl. of Brian Kashouty ("Kashouty Decl.") ¶¶ 5-6.) When paramedics arrived, Plaintiff was placed on a gurney by paramedics and treated for injuries. (*Id.* ¶ 7.) Before Plaintiff was transported by paramedics to a hospital, Plaintiff was identified by the victim as the person that broke into his residence and took his cellphone and wheelchair. (Wagner Decl. ¶ 11.)

Officer Wiese observed that Plaintiff was extremely agitated, sweating profusely, heard Plaintiff claim to have ingested an unknown substance and demand to have his stomach pumped, and that he was uncooperative with the medics. (Wiese Decl. ¶ 32.) Officers Wiese and Wagner both indicate Plaintiff was transported to Alvarado Hospital where he was treated for dog bite injuries. (*Id.* ¶ 34; Wagner Decl. ¶ 12.) Plaintiff was then transported to Central Headquarters for processing and then on to county jail by 8:15 a.m. that morning. (Wagner Decl. ¶¶ 13-14; Kashouty Decl. ¶¶ 12-13.)

## DISCUSSION

### I. Summary Judgment

#### A. Applicable Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A moving party bears the initial burden of showing there are no genuine issues of material fact. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citing *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). The moving party can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the

burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). As explained more fully below, Defendants have met their initial burden of showing there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Horphag Research Ltd.*, 475 F.3d at 1035. However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 . "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). Plaintiff, who has nothing before the Court except conclusory allegations in his Complaint, has not shown there is a genuine issue for trial.

### B. Lack of Opposition

Plaintiff has not filed any opposition to the Motion. However, under Federal Rule of Civil Procedure 56(e), summary judgment may not be granted "by default even if there is a complete failure to respond to the motion." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (quoting Fed. R. Civ. P. 56(e) Adv. Comm. Notes (2010)). Where, as here, a party fails to "address another party's assertion of fact as required by Rule 56(c)," the court has four options. Fed. R. Civ. P. 56(e). The Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." *Id.*

As outlined above, Plaintiff has not filed an Opposition to the Motion despite being provided notice of the Motion by Defendants and the Court, as well as notice of his obligation to respond to it. Plaintiff's failure to respond to the Motion also follows his failure to comply with initial and pretrial disclosure requirements or to respond to Defendants' discovery requests. Plaintiff has essentially filed a Complaint and

abandoned his case except for updating his address. Finally, as explained in more detail below, Defendants have put forth evidence in support of their Motion showing that Defendants are entitled to summary judgment.

Based on the foregoing, pursuant to Rule 56(e), the Court **RECOMMENDS** the facts set forth by Defendants be considered undisputed and the Motion for Summary Judgment be **GRANTED** because, as discussed below, the Motion and supporting materials show that Defendants are entitled to summary judgment.

### C. Plaintiff's Claims

It appears from the allegations of Plaintiff's Complaint that he is asserting claims for excessive force, assault and battery,[4] denial of medical care, and cruel and unusual punishment. The Court addresses each below.

#### 1. Excessive Force

##### a) Fourth Amendment Violation

Plaintiff's Complaint alleges that Officer Wiese's use of the police dog to bite and hold Plaintiff was excessive force.[5] Plaintiff appears to assert this claim under the 1st, 4th, 8th, and 14th Amendments. "In addressing an excessive force claim brought under § 1983, [the] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985)). "[A]ll claims that law enforcement officers have used excessive force . . . in the course of

---

[4] It appears Plaintiff has identified assault and battery within his claim of excessive force, however, out of an abundance of caution, the Court also analyzes it separately below.

[5] Plaintiff's Complaint, under a heading for cruel and unusual punishment, alleges that his handcuffs were too tight and this caused him pain. To the extent Plaintiff is asserting an excessive force claim, or any other claim, on this basis, there is no evidence to support it. There is no evidence that Plaintiff's handcuffs were too tight or that he suffered any injury as a result.

7

16cv170 BAS (BGS)

an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395. Because Plaintiff's claim is based on conduct during the course of his arrest, the Court analyzes it under the Fourth Amendment.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Marquez v. City of Phoenix*, 693 F.3d 1167, 1174 (9th Cir. 2012) (quoting *Graham*, 490 U.S. at 396).

### (1) Nature and Quality of the Intrusion

In considering the nature and quality of the intrusion on Plaintiff's Fourth Amendment rights, the evidence indicates that Plaintiff was bitten by the dog and the dog held on to him until another officer arrived to assist in handcuffing Plaintiff. He suffered injuries significant enough that he was taken to a hospital for treatment, but was released from the hospital within a few hours. However, for purposes of this analysis the Court assumes that the force used by deploying the dog was very serious given the potential for severe injury posed by a dog bite. *See Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003) (concluding that dog bite and hold was a serious intrusion on Plaintiff's Fourth Amendment interests); *see also Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (assessing force used in having a dog seize a suspect was severe).

### (2) Governmental Interests at Stake

Reasonableness is analyzed "from the perspective 'of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham*, 490 U.S. at 396). Additionally, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.

"'[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) and citing *Garner*, 471 U.S. at 8-9). However, "these factors . . . are not exclusive. Rather, we examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). Other relevant factors include whether less intrusive alternatives were available and whether warnings were given prior to the use of the force. *Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011).

### (a) Severity of the Crime at Issue

Plaintiff committed a "hot prowl" burglary of a residence. Officer Wiese knew this to be a burglary *with an occupant inside*. Additionally, on the way to the scene of the burglary, Officer Wiese heard the dispatcher report that Plaintiff broke into an occupied residence, forced the occupant out of his wheelchair, and fled the residence with the wheelchair and the victim's phone. The severity of the crime at issue supports Officer Wiese's use of force.

### (b) Immediate Threat to the Safety of the Officers or Others

Officer Wiese, based on his training and 18 years of experience, was also aware that individuals committing home invasions of occupied residences are often armed and under this influence of narcotics. (Wiese Decl. ¶¶ 2, 5.) Additionally, although Officer Wiese does not indicate he observed a weapon, there were numerous times throughout Plaintiff's flight from police that Plaintiff was out of sight and might have obtained something to be used as a weapon, including right before he was apprehended when he dove into bushes and Officer Wiese could not see what he was doing. Additionally,

Plaintiff's route, as he fled police, took him into a residential area and through an apartment complex, increasing the threat he posed to the public. Finally, Plaintiff was not just running from police for some minor infraction,[6] he was being sought for having broken into an inhabited residence, forcing the occupant out of his electric wheelchair, and taking the victim's wheelchair and phone. Plaintiff's conduct demonstrated a willingness to use physical force and indicated he posed a threat to the public and the officers. This factor weighs in favor of the use of force.

### (c) Resisting Arrest or Attempting to Evade Arrest

Plaintiff was certainly attempting to evade arrest. He jumped out of the stolen electric wheelchair and started running when he saw police. He cut through a gas station and down a dark alley into a residential area. Officer Wiese, only a few feet away and yelling, told him to stop and he did not. He continued to attempt to evade arrest. He proceeded through an apartment complex and then attempted to conceal himself in bushes. Plaintiff's attempts to evade arrest weigh in favor of the use of force.

### (d) Less Intrusive Alternatives

The Court could speculate that there might have been less intrusive alternatives to the force employed, however, it would be speculation. Officer Wiese was making a split second decision as to how to stop a suspect that was hiding in a residential area and was hiding in a way that Officer Wiese could not determine if Plaintiff was arming himself. He was attempting to take Plaintiff into custody on his own while at the same time using his flashlight to alert other officers to his location. Speculating that he might have been able to take Plaintiff into custody without the assistance of the dog would be the kind of 20/20 hindsight the Court should not employ and "[w]hile the existence of less forceful options to achieve the governmental purpose is relevant, 'police officers . . . are not

---

[6] Unlike *Chew v. Gates*, where the plaintiff had been stopped for a traffic violation and eventually fled to a scrap yard after producing his driver's license and engaging in conversation with officers, here Plaintiff had committed a serious crime involving threatening behavior. 27 F.3d at 1442.

required to use the least intrusive degree of force possible.'" *Marquez*, 693 F.3d at 1174 (quoting *Forrester v. City of San Diego*, 25 F.3d 804, 07-08 (9th Cir. 1994)). Given the circumstances and the lack of evidence of any available less intrusive alternatives, this factor weighs in favor of the use of force.

### (e) Warnings Given

Officer Wiese warned Plaintiff of the exact use of force he was going to employ and did employ. He yelled at Plaintiff when Plaintiff was only a few feet away to stop and warned him that if he did not he would send the dog and the dog would bite him. Officer Wiese deployed the dog when Plaintiff refused to stop and continued to evade arrest. This factor weighs in favor of the use of force. *See Marquez*, 693 F.3d at 1175 ("[I]f the officer warned the offender that he would employ force, but the suspect refused to comply, the government has an increased interest in the use of force.").

Balancing the very serious nature of the intrusion on Plaintiff's Fourth Amendment interests posed by the dog bite and hold against the governmental interests at stake under the *Graham* factors and totality of the circumstances discussed above, the Court finds the use of force was reasonable.

### b) Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory of constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Under *Pearson v. Callahan*, the Court may decide which of the two prongs to address first. 555 U.S. 223, 236 (2009). Here, as discussed above, there is no constitutional violation. Accordingly, Officer Wiese is entitled to qualified immunity.

Based on the lack of any evidence of a Fourth Amendment violation and Officer Wiese's entitlement to qualified immunity on this claim, the Court **RECOMMENDS** that summary judgment be **GRANTED** on this claim.

### 2. Assault and Battery

Plaintiff appears to have claimed he was subjected to assault and battery as part of his excessive force claim that the Court has already addressed. However, Defendants have produced evidence that any state law claim for assault and battery against the City or Officer Wiese is time barred for failing to present the claim to the City within six months after the accrual of the cause of action. Cal. Gov't Code § 911.2(a) (requiring presentment of claim for personal injury "not later than six months after the accrual of the cause of action."). The incident happened on April 23, 2015 and Plaintiff's claim was not presented until January 26, 2016. (Decl. of David Dunkle ¶ 3.) Plaintiff also failed to present an application to present a late claim. (*Id.* ¶ 4.) To the extent Plaintiff is asserting a separate claim for assault and battery, it is time-barred. The Court **RECOMMENDS** that summary judgment be **GRANTED** for Defendants on this claim.

### 3. Denial of Medical Care

Plaintiff's Complaint identifies the First, Fourth, Eighth, and Fourteenth Amendments in conjunction with his allegation that he was "denied medical care at the place of his injuries." (Compl. at 4.)

Defendants argue the claim is subject to the Due Process clause because Plaintiff was a pretrial detainee. Claims of denial of medical treatment by pretrial detainees arise under the Due Process Clause of the Fourteenth Amendment. *Carnell v Grimm*, 74 F.3d 977, 979 (9th Cir. 1996); *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) ("Claims by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment."). "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply the same standards." *Frost*, 152 F.3d at 1129 (citing *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1441 (9th Cir. 1991)). "Prison officials violate the Eighth Amendment if they are 'deliberately indifferent to a prisoner's serious medical needs.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

However, *Tatum v. City and County of San Francisco*, the Ninth Circuit analyzed a claim by an arrestee based on the denial of medical care as an excessive force claim subject to the Fourth Amendment. 441 F.3d 1090, 1098-99 (9th Cir. 2006). The court found that a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment." *Id.* at 1099 (addressing officers not performing CPR on an arrestee).[7]

The distinction between the two may be whether the alleged need for medical care arises at the scene of arrest and because of the arrest or while in pretrial detention; however, Defendants are entitled to summary judgment under either standard. Officers at the scene promptly sought paramedics for Plaintiff. He was seen by paramedics at the scene and transported to a hospital where he was treated for his injuries. There is no evidence of deliberate indifference or that medical assistance was not promptly sought. The Court **RECOMMENDS** that summary judgment be **GRANTED** for Defendants on this claim.

### 4. Cruel and Unusual Punishment

Defendants argue the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to Plaintiff because he had not been convicted and sentenced. However, the Court need not determine if this or any other standard might apply to such a claim prior to conviction because there is no evidence in support of this claim. Plaintiff's Complaint appears to claim that he was subjected to cruel and unusual punishment in the

---

[7] The court noted *Graham's* holding, discussed earlier, that "all claims that law enforcement officers have used excessive force should be analyzed under the Fourth Amendment." *Id.* at 1099 (quoting *Graham*, 490 U.S. at 395). The court then found that its pre-*Graham* due process precedent in *Maddox v. City of Los Angeles*, "set the standard for objectively reasonable post-arrest care." *Id.* (discussing 792 F.2d 1408, 1415 (9th Cir. 1986)). That precedent dictates "that 'due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." 441 F.3d at 1099 (quoting *Maddox*, 792 F.2d at 1415).

denial of medical care and in his handcuffs being too tight and causing pain. As previously noted, there is no evidence to support Plaintiff's claim regarding handcuffs and the Court has already addressed his medical claim above. The Court **RECOMMENDS** that summary judgment be **GRANTED** for Defendants on this claim.

### 5. *Monell* Claim

Defendants accurately note that it is difficult to decipher whether Plaintiff is asserting any of his claims against the San Diego Police Department or the City of San Diego for an unlawful policy, custom, or habit pursuant to *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 690 (1978). However, to state a § 1983 claim against a local government under *Monell*, a plaintiff must show: (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). Plaintiff has neither plead nor put forth any evidence in support of any of these requirements. The Court **RECOMMENDS** that summary judgment be **GRANTED** for Defendants on this claim.

## II. Motion to Dismiss for Failure to Prosecute

Defendants move to dismiss this entire action with prejudice for failure to prosecute. As discussed above, Plaintiff has not responded to any of Defendants' discovery requests or filed an Opposition to Defendants' Motion for Summary Judgment. Additionally, Defendants argue Plaintiff has failed to comply with the Scheduling Order's pretrial requirements to serve initial or pretrial disclosures or provide a pretrial order to Defendants.

Defendants do not address any of the five factors the district court must weigh to determining whether to dismiss a case for lack of prosecution. *See Sw. Marine Inc. v. Danzig*, 217 F.3d 1128, 1138 (9th Cir. 2000).[8]

Given the analysis above and recommendation that summary judgment be granted to Defendants on all claims on the merits, the Court **RECOMMENDS** the Motion to Dismiss for Failure to Prosecute be **DENIED** as moot.

## CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS RECOMMENDED** that the Court **GRANT** Defendants' motion for summary judgment and **DENY** as moot Defendants' Motion to Dismiss for Failure to Prosecute.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than May 19, 2017.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than June 2, 2016.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: May 5, 2017

Hon. Bernard G. Skomal
United States Magistrate Judge

---

[8] Courts must consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Sw. Marine*, 217 F.3d at 1138.